J-A09042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.B., MOTHER | : : : : : : : | |
| | : | No. 1181 WDA 2020 |

Appeal from the Order Entered October 7, 2020
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-176-2019

BEFORE:  STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED: MAY 24, 2021**

S.B. (Mother) appeals the order of involuntary termination entered by the Allegheny County Orphans' Court (Orphans' Court) as to A.D. (the Child).[1] Mother argues that the Orphans' Court erred in finding that termination was warranted because it does not best serve the Child's needs.  However, based on the undisputed record facts and the applicable law, the order of involuntary termination is affirmed.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In a separate order, the Orphans' Court also involuntarily terminated the parental rights of the Child's father and an unknown father, neither of whom is a party to this appeal.

**I.**

This case began on September 17, 2018, when the Allegheny County Office of Children, Youth and Families (CYF) filed a Petition for Involuntary Termination of Parental Rights (Petition). In the Petition, CYF asserted that under several provisions of the Adoption Act (23 Pa.C.S. §§ 2101-2938), termination of Mother's parental rights would be in the best interest of the Child. The Orphans' Court held a hearing on September 30, 2020, concerning Mother's relevant conduct and the Child's needs. The evidence introduced at the hearing was summarized by the Orphans' Court as follows:

> The Petition was filed in 2018 after [Mother] was seen on the street with A.D. and was intoxicated. The police were dispatched and were able to contact the child's father who was also intoxicated. A.D. was adjudicated dependent on November 2, 2018 and has been in placement for the past 26 months. Neither of A.D.'s natural parents participated in the hearing which was conducted via Microsoft Teams on September 30, 2020. The instant appeal was filed on behalf of Mother.
>
> A.D. is a three-year old girl who was placed with foster parents . . . at the time of the hearing. Dr. Eric Bernstein, a licensed psychologist and an expert in forensics and clinical psychology, conducted examinations and authorized several reports in this case. He examined A.D. with her foster parents and testified that A.D. views her foster parents as her psychological parents. This was buttressed by the caseworker who described the bond between A.D. and her foster parents as a parent-child bond.
>
> Dr. Bernstein also observed A.D.'s interaction with Mother but had a much different opinion. He testified A.D. was in some form of distress and/or expressed frustration and irritability when interacting with Mother which was unlike the child's interaction with the foster parents. Dr. Bernstein testified there was a lack of bond between A.D. and Mother and, at best, he characterized it as a fractured bond. At worst, he opined A.D. really has no sense of Mother as being an important person in her life.

Regardless, Dr. Bernstein believes A.D. understands the relationship with Mother is fractured and this "lack of bond" is weakened by Mother's lack of participation in the child's life such that A.D. does not fully embrace her role as a mother or view her as a parent figure.

Dr. Bernstein conducted a mental health examination of Mother and he believes she qualifies for a diagnosis of PTSD and opioid dependence in sustained remission. Mother admitted that she suffers significant trauma from which she has yet to recover or formally address in any form of treatment. Dr. Bernstein believes this unresolved distress will worsen and become more severe if Mother allows it to continue. Mental health treatment would be become more severe if Mother allows it to continue. Mental health treatment would be appropriate for Mother to address her own needs before she can be in a position to deal with A.D.'s needs. In conclusion, Dr. Bernstein did not believe Mother was in a position to provide a full-time caretaking role and reunify with A.D.

Dr. Bernstein also conducted a mental health examination of Father who admittedly has an ongoing problem with alcohol. Father also has mental health issues as he struggles with clinical depression and severe anxiety. Father and Mother have separated in the past and have a strained relationship. Father told Dr. Bernstein that Mother struggled in managing the pressure of taking care of a child. Given his unstable relationship with Mother, issues of addiction, limited contact and participation in A.D.'s life, his own recognition of the need for treatment and his current unemployment, this Court did not view Father as a viable candidate to serve as a caregiver to A.D. or for reunification at this time.

Neither Mother nor Father has made a serious attempt to be involved in A.D.'s short life, visiting with her only five times over a more than two-year period while A.D.'s case was open in juvenile court. Each of them has failed to show up for multiple visits, meetings, evaluations, etc. over the course of this case. By way of example, William Pipkins from A Second Chance, Inc. testified there were 15 visits scheduled between September 1 9, 2018 and January 18, 2020. Of those 15 visits, only two visits were completed successfully with 13 cancellations because Mother failed to confirm with the agency. For a child A.D.'s age (having just turned three years old), that limited amount of involvement

has prevented Mother from developing a meaningful connection with A.D. or fulfilling any parenting role.

Both Mother and Father have criminal backgrounds and Mother has been in and out of incarceration due to a 2018 charge for resisting arrest. Mother's probation officer, Officer McCutcheon, summarized her arrest history at the hearing. On November 28, 2018, a bench warrant was issued for Mother. On February 4, 2019, she was arrested and then released on February 7, 2019. On March 7th, 2019, another bench warrant was issued for Mother for failure to appear. On April 12,2019, she was arrested and released on April 16, 2019. On July 18, 2019, another bench warrant was issued for failure to appear. On September 18, 2019, she was arrested and remained in the Allegheny County Jail until January 9, 2020. Mother has not shown stability having been incarcerated three times over the past 19 months and this Court believes delaying permanency for A.D. will only further subject the child to disruption in her everyday life.

Both Mother and Father have substance abuse issues. Keri Vanderpool, [CYF] casework supervisor for this case, testified that Mother has tested positive for barbiturates, morphine, benzodiazepines, Suboxone and cocaine over the course of this case. Sarah Carter and Taylor Wiggins from Venango County Children & Youth Services both testified at the hearing and expressed concerns about Mother's ability to be a caregiver given her admitting to using drugs, the several positive drug screens that she has had, the struggle that the agency plus service providers have had with contacting her and maintaining contact. According to Taylor Wiggins, both Mother and Father tested positive for methamphetamines and amphetamines following a drug screen administered on September 1, 2020. Although they denied this drug use, Mother admitted that the week prior both her and Father had used Adderall XR, 30 milligrams, one pill, for which they do not have a prescription. Even more recently, Mother and Father failed to appear for drug tests on September 25 and 29, 2020 (the day before the hearing). These recent positive tests and failures to appear for drug screenings underscore the ongoing issue of substance use and the extent that it affects Mother and Father's decision-making and ability to be caregivers to A.D.

[CYF] casework supervisor, Keri Vanderpool, testified at the hearing about the extensive efforts the agency had made for

reunification in this case, including: (i) developing goals for Mother, (ii) developing family plans memorializing the goals, and (iii) conducting family plan meetings. The agency's goals included sobriety through drug and alcohol treatment, permanent housing, consistent visits, and keeping in contact with the agency. The agency also wanted Mother to bolster her parenting skills and address her mental health and criminal issues. Mother failed to meet any of these goals. Mother's drug issues were discussed above, plus she failed to complete a POWER assessment and other drug and alcohol recommendations and failed to follow through with suitable housing. Mother only attended one family plan meeting back in August, 2019. Mother also failed to show any consistency with seeing A.D., as stated above. This Court found [CYF] attempted to provide services for both Mother and Father to assist them in reunification with A.D., but they never followed through with anything.

[The Orphans' Court] views terminating a parent's rights very seriously and has given Mother numerous opportunities, over the objection of the attorneys involved in this case, to complete the required evaluations and to have visits with A.D. Unfortunately, there has been no compliance with the permanency plan and there has been no progress toward alleviating the circumstances which necessitated the original placement more than 2 years ago. Stability is important for any age but most especially for a young child such as A.D. who is fully dependent upon a caregiver to provide for her needs. It was clear that neither Mother nor Father could provide this stability for A.D. and, as such, this Court agreed with Dr. Bernstein that reunification was no longer a viable option.

Granting the Petition will not cause A.D. psychological harm as A.D. does not view her natural parents as those persons meeting her needs or providing for her care. She is not dependent upon them for any sense of support due to their inconsistent visitation and level of participation in her life.

Orphans' Court Opinion, 12/14/2020, at 2-6.

At the conclusion of hearing, the Orphans' Court found that CYF had shown by clear and convincing evidence that Mother's conduct satisfied the grounds for termination enumerated in Sections 2511 (a)(1), (a)(2), (a)(5)

and (a)(8) of the Adoption Act. The Orphans' Court also found that the termination of Mother's parental rights was in the best interest of the Child.

Mother timely appealed the order of involuntary termination. In her appellate brief, she raises one issue:

> Did the trial court abuse its discretion and/or err as a matter of law in concluding that termination of [Mother's] parental rights would serve the needs and welfare of A.D. pursuant to 23 Pa.C.S. § 2511(b)?

Appellant's Brief, at 7.

## II.

## A.

Mother's sole claim is that the Orphans' Court abused its discretion by ordering the termination of parental rights without fully evaluating the Child's needs under 23 Pa.C.S. § 2511(b). When reviewing an order granting or denying a petition to involuntarily terminate parental rights, this Court must "accept the findings of fact and credibility determinations of the [Orphans' Court] if they are supported by the record." *In re S.P.*, 47 A.3d 817, 826 (Pa. 2012). Such an order may only be overturned to correct an abuse of discretion or an error of law. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). An abuse of discretion consists of "manifest unreasonableness, partiality, prejudice, bias or ill-will." *In re S.P.*, 47 A.3d at 821.

The Orphans' Court is free to believe all, part or none of the evidence presented, and may make all credibility determinations and resolve conflicts in the evidence. *See In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004).

Appellate courts defer to the Orphans' Court's factual findings because it has made "first-hand observations of the parties spanning multiple hearings." ***In re T.S.M.***, 71 A.3d at 267.

In addressing petitions to terminate parental rights involuntarily, the Adoption Act requires the Orphans' Court to conduct a bifurcated analysis as outlined in 23 Pa.C.S. § 2511(a) and (b). The Orphans' Court first focuses on the conduct of the parent to evaluate whether the party seeking termination has presented clear and convincing evidence that the parent's conduct satisfies any of the grounds for termination enumerated in Section 2511(a). If at least one ground has been proven, then the Orphans' Court will analyze the case in the context of Section 2511(b), which concerns whether the termination of parental rights would be in the best interest of the child.

"The court in terminating the rights of a parent shall give primary consideration to the developmental, physical, and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). Parental rights cannot be terminated based solely on factors outside of the parent's control, but the parent cannot rely on efforts made after a petition of termination has been filed to remedy the conditions that prompted the petition's filing. ***Id***.

The Orphans' Court should instead focus on the existence of the child's bond with the parent, if any, and whether the child will "suffer extreme emotional consequences" from severing that bond. ***See In re E.M.***, 620 A.2d 481, 485 (Pa. 1993); ***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007). "[A]

parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his parental duties, to the child's right to have proper parenting and fulfillment of the child's potential in a permanent, healthy, safe environment." *In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

**B.**

In the present case, the Orphan's Court found that CYS met its burden under 23 Pa.C.S. § 2511(a), and Mother does not challenge that finding. Rather, Mother's sole appellate claim is that the Orphans' Court abused its discretion as to its determination that pursuant to Section 2511(b), termination of her parental rights is in the Child's best interest. According to Mother, the Orphans' Court made that finding by merely citing its conclusion as to Section 2511(a) that Mother had failed to progress toward alleviating the conditions that had originally prompted the Child's placement with foster parents. *See* Appellant's Brief, at 19.

After reviewing the record, as well as the Orphans' Court's findings, we determine that the order of involuntary termination is supported by clear and convincing evidence with respect to the requirements of Section 2511(b). The Orphans' Court focused specifically on the Child's lack of a bond with Mother, and the fact that the Child would not suffer extreme emotional consequences due to the termination of Mother's parental rights:

> Granting the Petition will not cause A.D. psychological harm as A.D. does not view her natural parents as those persons meeting

- 8 -

her needs or providing for her care. She is not dependent upon them for any sense of support due to their inconsistent visitation and level of participation in her life.

Orphans' Court Opinion, 12/14/2020, at 6.

This conclusion is supported by clear and convincing evidence in the record. The Child was nine months old when she was removed from Mother's custody. For 26 months, Mother had limited interaction with the Child, and she only visited the Child five times in that span. There was consistent testimony at the hearing on the petition to terminate parental rights that the Child does "not view [Mother] as a parent figure." Hearing Transcript, 9/30/2020, at p. 35. The court-appointed forensic evaluator, Dr. Eric Bernstein, testified further that terminating Mother's parental rights would not have a "deleterious impact" on the Child. **See id**. at p. 66.

Conversely, there was strong evidence that the Child had bonded with her foster parents. Dr. Bernstein testified that the Child "responded well to both foster parents" and that the foster parents were "knowledgeable about the [Child's] needs and able to meet her needs." **Id**. at p. 24. The Child's foster care caseworker, Joshua Goodman, as well as the CYF supervisor, Keri Vanderpool, both testified that the Child now sees her foster parents as her "mom and dad," and that the foster parents are able to meet all the Child's needs. **Id**. at pp. 88-89, 116.

The demonstrable lack of a relationship between the Child and Mother, compared to the strong bond developed between the Child and her foster

parents, support the determination of the Orphans' Court that the termination order is in the Child's best interest.  Thus, finding no abuse of discretion, the order of involuntary termination must stand.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  05/24/2021